DOWNEY, Judge.
This is an appeal from two final judgments entered March 4, 1976, and April 13, 1977, holding that appellant, Capital America, Inc., was not entitled to recover in its suit for rescission and for subrogation rights to a mortgage title insurance policy.
Appellee B.E.C., Inc., owned certain real property in Broward County, Florida. Said property was "encumbered by three mortgages payable to Industrial Discounts Inc. (hereinafter referred to as IDI). B.E.C., Inc., negotiated a loan from appellee, Lester White, for $161,000 and agreed to give White a first mortgage on said property. The proceeds of the loan were to be used by *937 B.E.C., Inc., to pay off the IDI mortgage and all liens held by the Internal Revenue Service. White furnished his lawyer, Zamer, with the proceeds of the loan which Zamer disbursed by paying the amount due to the IRS and the balance to B.E.C., Inc. B.E.C., Inc., furnished Zamer with satisfactions of the IDI mortgages, “a first mortgage” from B.E.C., Inc., to White and, after recording said instruments, issued to White a Lawyers Title & Guaranty Fund mortgagee title insurance policy for $161,000.
Approximately fifteen months later appellant, Capital America purchased the property in question from B.E.C., Inc., subject to the White mortgage. In due course the latter mortgage came due and Capital America paid it in full. Within a month or so thereafter IDI demanded payment on its three mortgages.[1] When Capital America refused, this foreclosure proceeding was instituted.
IDI named as defendants B.E.C., Inc., Capital America, Lester White, Landmark First National Bank of Fort Lauderdale and others. Capital America counterclaimed against IDI and cross-claimed against B.E.C., Inc., White, Landmark Bank, Lawyers Title Guaranty Fund and others. By its crossclaim Capital America a) sought rescission against B.E.C., Inc., and White and b) subrogation to White’s rights against Lawyers Title Guaranty Fund on its mortgagee title insurance policy.
Prior to trial a default was entered against cross defendant B.E.C., Inc., and on March 4, 1976, the trial court dismissed Capital America’s crossclaim against Lawyers Title Guaranty Fund with prejudice. Capital America’s crossclaim against White and White’s crossclaim against Lawyers Title Guaranty Fund were tried by the court without a jury and final judgment was ultimately entered against appellant.
Appellant contends it was entitled to rescission against B.E.C., Inc., putting the parties back in status quo because B.E.C., Inc., was guilty of active fraud and misrepresentation in its dealings with Capital America. On the merits, if Capital America and B.E.C., Inc., were the only parties involved in a return to status quo, it would seem Capital America was entitled to prevail on that issue. In addition, a default had been entered against B.E.C., Inc, However, in order to return B.E.C., Inc., and Capital America to their original position it would also be necessary for Lester White to return to Capital America the money Capital America paid to White to retire his mortgage. Capital America sought rescission also against White but the trial court held that under the circumstances of this case Capital America was not entitled to rescission against W’hite, and we agree.
It must be remembered that White was a subject of B.E.C., Inc.’s fraud just as was Capital America. Had White known that IDI mortgages were not paid and the satisfactions furnished him were forgeries White would not have made the loan to B.E.C., Inc. Later when White accepted full payment of his mortgage from Capital America he still had no knowledge of the fraud perpetrated on him because B.E.C., Inc., had continued to pay the IDI mortgages for over a year after the White loan was consummated. The record further supports the trial court’s finding that White made no false representations to Capital America to induce it to buy the property or to pay off White’s mortgage when it was due.
Appellant contends that, as between the two innocent parties, White and Capital America, White’s negligence in not inquiring about the validity of the satisfactions and in not picking up the IDI promissory notes when the IDI mortgages were allegedly paid off enabled B.E.C., Inc., to defraud both White and Capital America and White should bear the loss. We have considered all of appellant’s arguments in support of this theory and find them to be without merit. We thus conclude that the trial judge was correct in denying rescission.
*938 As an alternative theory of recovery appellant sought to be subrogated to White’s rights under his mortgagee insurance policy issued by Lawyers Title Guaranty Fund. The mortgagee insurance policy in question provides that the term “insured” thereunder includes “the owner of the indebtedness secured by the insured mortgage and each successor in ownership of such indebtedness.” Since appellant would be covered by said policy if appellant was an assignee of the mortgagee, it is contended that appellant should be subro-gated to White’s rights vis-a-vis the insurer. Appellant argues that legal subrogation arises by operation of law where one having a liability pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. Boley v. Daniel, 72 Fla. 121, 72 So. 644 (Fla.1916). Appellant also relies upon the Restatement of Restitution, § 207, which provides that where the money of one person is wrongfully used to discharge a mortgage or other encumbrance upon a wrongdoer’s property the person is entitled to be subrogated to the rights of the mortgagee or other en-cumbrancer.
As against B.E.C., Inc., appellant would certainly fall within the above rule set forth in the Restatement of Restitution for B.E.C., Inc., was clearly a wrongdoer. But that application does not apply to White. He was duped by B.E.C., Inc., just as was Capital America. It must also be remembered that White’s mortgage was a bona fide lien on the property which appellant had assumed and agreed to pay. Furthermore, Capital America is not an assignee of the White mortgage and thus does not fit within the definition of an insured in the mortgagee policy. The mortgagee policy is an indemnity contract between White and Lawyers Title Guaranty Fund and there is no privity between appellant and Lawyers Title Guaranty Fund. Nor are there any of the elements of a third party beneficiary contract existent here.
Finally, appellant had an opportunity to insure its title when it bought the property from B.E.C., Inc. subject only to the White mortgage. That it failed to do and we find no justified compelling legal theory upon which appellant can now seek to impose liability upon Lawyers Title Guaranty Fund.
In our view the learned Chancellor properly resolved all of the issues in this case and should be affirmed.
AFFIRMED.
ANSTEAD and GLICKSTEIN, JJ., concur.

. The satisfactions which B.E.C., Inc. furnished to White’s counsel at the time of closing the White mortgage were forged.